MRM:MEF
F. #2021R00016

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH SNAPCHAT USERNAME "CARMINESIMPSON" CONTROLLED BY SNAPCHAT, INC. | **APPLICATION FOR A SEARCH WARRANT FOR INFORMATION IN POSSESSION OF A PROVIDER (SNAPCHAT ACCOUNT)**<br><br>Case No.   21-MJ-123(ARL) |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, AARON E. SPIVACK, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with the Snapchat username "CARMINESIMPSON" (the "SUBJECT ACCOUNT") that is stored at premises owned, maintained, controlled or operated by Snapchat, Inc. ("Snapchat"), a social networking company headquartered in Santa Monica, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Snapchat to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the username.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI").  As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of

Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.  I have been a Special Agent with the FBI for approximately 12 years.  I am now assigned to the FBI's Child Exploitation and Human Trafficking Task Force, which investigates individuals suspected of being involved in the receipt, distribution, possession and production of child pornography and sex trafficking, among other offenses.  While employed by the FBI, I have conducted and participated in numerous investigations of criminal activity, including, but not limited to investigations related to the sexual exploitation of children, child pornography, and other sex offenses. As a result, and based on my training and experience, I am familiar with the laws regarding sexual offenses and how sexual offenses are commonly committed. I have been assigned to investigate violations of criminal law relating to sexual offenses, and I have gained expertise in how to conduct such investigations through, among other things, training I have received in seminars and classes, and my daily work in relation to these types of investigations. As part of my responsibilities, I have participated in numerous investigations into the commission of various sex offenses. During these investigations, I have executed, or participated in the execution of, numerous search warrants involving electronic devices. I have also received training regarding computer technology and the way electronic devices are used to further criminal activity, including sex offenses. I have training and experience in numerous areas of criminal investigations and procedures, including search warrant applications, executing searches and seizures, and seizing and processing computer evidence.  As part of my responsibilities, I have reviewed thousands of photographs depicting children (less than eighteen years of age)

being sexually exploited by adults.  Through my experience in these investigations, I have become familiar with methods of determining whether a child is a minor.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that CARMINE SIMPSON violated Sections 2251 (sexual exploitation of children), 2252 (transportation, receipt, distribution and possession of material involving sexual exploitation of minors), 2252A (transportation, receipt, distribution and possession of child pornography) and 2422 (coercion and enticement) (together, the "Subject Offenses").  There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## DEFINITIONS

5.      For the purposes of this affidavit, the following terms have the indicated meaning herein:

a.      "Child Pornography," as used herein, includes the definition in 18 U.S.C. § 2256(8) (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the

3

visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct), as well as any visual depiction, the production of which involves the use of a minor engaged in sexually explicit conduct (see 18 U.S.C. §§ 2252 and 2256(2)).

      b.     "Child Erotica," as used herein, means materials and items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene and that do not necessarily depict minors in sexually explicit poses or positions.

      c.     "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. See 18 U.S.C. § 2256(5).

      d.     "Computer," as used herein, is defined pursuant to 18 U.S.C. § 1030(e)(1), as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device[.]"

      e.     "Computer software," as used herein, is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

      f.     The terms "records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in

4

handmade form (including, but not limited to, writings, drawings, painting), photographic

form (including, but not limited to, microfilm, microfiche, prints, slides, negatives,

videotapes, motion pictures, photocopies), mechanical form (including, but not limited to,

phonograph records, printing, typing) or electrical, electronic or magnetic form (including,

but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage

devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs),

Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical

disks, printer buffers, smart cards, memory calculators, electronic dialers, drives, or

electronic notebooks and tablets, as well as digital data files and printouts or readouts from

any magnetic, electrical or electronic storage device).

## **PROBABLE CAUSE**

6.     On or about December 30, 2020, law enforcement in Maryland received two

cybertips from the National Center for Missing and Exploited Children ("NCMEC"),

informing them that an individual (the "TARGET") was utilizing a Twitter account with the

number 1240754153749692416 (the "Twitter Account") to communicate with and persuade

minors to produce and send sexually explicit images and videos to him (together, the

"Reports").  According to records submitted by Twitter in connection with the Reports (the

"Twitter Records"), the Twitter Account is associated with the following vanity names:

"@BINGIEBONGIE" "@thelifeofchris88", "@LifeOfChris69", "@DACRYPHlLIC",

"@SOMNOPHLLIC" and "@DACRYYBOYY".   Additionally, the profile associated with

at least one of these vanity names included an age for the TARGET of 17 years old.

7.     Based on the Twitter Records, the TARGET had a cellular telephone with a number ending in 2276 (the "2276 Number").  According to the Twitter Records, the Twitter Account was suspended by Twitter on or about December 31, 2020.

8.     Based on the Twitter Records, which include online chats occurring in or about and between April 2020 and December 2020, the TARGET communicated with at least 46 apparent minors, who appear to have been between the ages of 13 and 17.  In these chats, the TARGET requested that the minors take sexually explicit videos and pictures of themselves, oftentimes masturbating or after drawing on their body with a marker.  Based on a review of the material submitted by Twitter, the TARGET obtained at least 18 photographic images and 33 videos containing apparent child exploitative material from minors.  The TARGET also obtained at least 162 photographic images and 48 videos containing child erotica.  During these conversations, the TARGET repeatedly represented that he was 17 years old.

9.     Based on the Twitter Records, during online communications, the TARGET repeatedly represented to potential victims that the SUBJECT ACCOUNT belonged to him and asked those individuals to connect with him on Snapchat.  During the course of these communications, the TARGET shared the username for the SUBJECT ACCOUNT at least 17 times.

10.     Included in the Reports and Twitter Records is information regarding various IP addresses used by the TARGET to access the Internet.   Using these IP address, in addition to other information obtained as part of the investigation, the FBI identified the TARGET as CARMINE SIMPSON, who was living at a residence in Holbrook, New York

6

(the "TARGET RESIDENCE").

11.     On January 27, 2021, the FBI obtained a search warrant for the person of CARMINE SIMPSON, the telephone associated with the 2276 Number (the "TARGET PHONE") and the TARGET RESIDENCE and all electronic devices therein.  (21 MJ 115 (currently filed under seal)).

12.     Pursuant to that search, the FBI recovered the TARGET PHONE, which is an iPhone, among other devices.  A search of the TARGET PHONE revealed numerous photos that SIMPSON had taken of himself and shared on Twitter, using the Twitter Account, with the minor victims, including photos of his penis.  Additionally, a review of the TARGET PHONE revealed that SIMPSON had the Snap application and was signed into the SUBJECT ACCOUNT.

13.     Further review of the TARGET PHONE revealed that SIMPSON had saved the contact information for certain Twitter users with whom he had corresponded in the TARGET PHONE.  Additionally, a review of the TARGET PHONE revealed that SIMPSON had a number of contacts saved in his phone that were labeled to indicate that they corresponded with individuals he met on Twitter.  For example, there are contacts in the TARGET PHONE that include "Stefanie Twitter," "Sophie Twitter," and "Margaret Twitter."  There are also messages contained in various applications in the TARGET PHONE and other electronic devices seized from the defendant wherein he suggests meeting up with someone that he has apparently met online.   It is also apparent from the TARGET PHONE that SIMPSON connected on Snapchat using the SUBJECT ACCOUNT with at least one of the apparent minors that he had met on Twitter.

7

14.     Additionally, the government has interviewed an individual who is employed by the NYPD, but is currently on modified duty, who was periodically partnered with CARMINE SIMPSON in 2019 ("Police Officer 1").[1]  Police Officer 1 stated in substance inter alia that while he was partnered with SIMPSON, SIMPSON repeatedly stated in sum and substance that he was interested in young girls, SIMPSON showed Police Officer 1 photos of nude females, who SIMPSON represented were 13 and 14 years old and who appeared to be pre-pubescent, and SIMPSON further stated in sum and substance that he was having intercourse with the 13-year-old female pictured in one of the photos.

15.     On January 28, 2021, CARMINE SIMPSON was placed under arrest and charged by complaint with violating 18 U.S.C. 2251(a) (sexual exploitation of a minor) (No. 21 MJ 119).  The complaint is attached hereto as EXHIBIT 1, and is fully incorporated herein.

16.     On January 9, 2021, the FBI submitted a preservation request to Snap for the SUBJECT ACCOUNT.

17.     Therefore, based on the information described above, there is probable cause to conclude that the SUBJECT ACCOUNT contains evidence, contraband, fruits and instrumentalities of the Subject Offenses.

---

[1]     Police Officer 1 is currently the subject of an indictment in the Eastern District of New York charging wire fraud, in connection with a scheme to submit fraudulent postal insurance claims.  Police Officer 1, with counsel, met with the government pursuant to a proffer agreement and provided information about SIMPSON. No promises have been made to Police Officer 1 in exchange for Police Officer 1 meeting with the government.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

18.     I anticipate executing this warrant under the Electronic Communications

Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using

the warrant to require Snapchat to disclose to the government copies of the records and other

information (including the content of communications) particularly described in Section I of

Attachment B.  Upon receipt of the information described in Section I of Attachment B,

government-authorized persons will review that information to locate the items described in

Section II of Attachment B.

## CONCLUSION

19.     This Court has jurisdiction to issue the requested warrant because it is "a court

of competent jurisdiction" as defined by 18 U.S.C. § 2711.  See 18 U.S.C. §§ 2703(a),

(b)(1)(A) & (c)(1)(A).  Specifically, the Court is a district court of the United States that has

jurisdiction over the offense being investigated.  See 18 U.S.C. § 2711(3)(A)(i).

20.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is

not required for the service or execution of this warrant.  Rather, as noted above, the

government will execute this warrant by serving it on Snapchat.  Because the warrant will be

served on Snapchat, who will then compile the requested records at a time convenient to

them, reasonable cause exists to permit the execution of the requested warrants at any time in

the day or night.

21.    Based on the forgoing, I request that the Court issue the proposed search warrant.

Respectfully submitted,

AARON E. SPIVACK
Special Agent
Federal Bureau of Investigation

Sworn to before me this
__18_ day of February, 2021

THE HONORABLE ARLENE R. LINDSAY
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

10

# EXHIBIT 1

MRM:MEF
F. #2021R00016

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

CARMINE SIMPSON,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

C O M P L A I N T

(18 U.S.C. § 2251(a))

No. 21 MJ 119

EASTERN DISTRICT OF NEW YORK, SS:

AARON E. SPIVACK, being duly sworn, deposes and states that he is a

Special Agent with the Federal Bureau of Investigation, duly appointed according to law and

acting as such.

On or about and between April 2020 and December 2020, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendant CARMINE SIMPSON did knowingly and intentionally employ, use, persuade,

induce, entice and coerce a minor to engage in sexually explicit conduct for the purpose of

producing one or more visual depictions of such conduct, knowing and having reason to

know that such visual depictions would be transported and transmitted using any means and

facility of interstate and foreign commerce and which would be in and affecting interstate

and foreign commerce, which visual depictions were produced and transmitted using

materials that had been mailed, shipped and transported in and affecting interstate and

foreign commerce by any means, including by computer, and which visual depictions were

actually transported and transmitted using a means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce.

(Title 18, United States Code, Section 2251(a))

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.     I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and I have been in that role for approximately 12 years.  I am now assigned to the FBI's Child Exploitation and Human Trafficking Task Force, which investigates individuals suspected of being involved in the receipt, distribution, possession and production of child pornography and sex trafficking, among other offenses.  While employed by the FBI, I have conducted and participated in numerous investigations of criminal activity, including, but not limited to investigations related to the sexual exploitation of children, child pornography, and other sex offenses.  As a result, and based on my training and experience, I am familiar with the laws regarding sexual offenses and how sexual offenses are commonly committed.  I have been assigned to investigate violations of criminal law relating to sexual offenses, and I have gained expertise in how to conduct such investigations through, among other things, training I have received in seminars and classes, and my daily work in relation to these types of investigations.  As part of my responsibilities, I have participated in numerous investigations into the commission of various sex offenses.  During these investigations, I have executed, or participated in the execution of, numerous search warrants involving

---

[1]     Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

electronic devices. I have also received training regarding computer technology and the way electronic devices are used to further criminal activity, including sex offenses. I have training and experience in numerous areas of criminal investigations and procedures, including search warrant applications, executing searches and seizures, and seizing and processing computer evidence. As part of my responsibilities, I have reviewed thousands of images depicting children (less than eighteen years of age) being sexually exploited by adults. Through my experience in these investigations, I have become familiar with methods of determining whether a child is a minor.

2. I am familiar with the facts and circumstances set forth below from my own participation in the investigation, my review of the investigative file, and from my conversations with, and review of reports of, other law enforcement officers and agents involved in the investigation.

## DEFINITIONS

3. For the purposes of this complaint, the following terms have the indicated meaning herein:

a. "Child Pornography," as used herein, includes the definition in 18 U.S.C. § 2256(8) (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct), as well as any visual depiction, the production of

4

which involves the use of a minor engaged in sexually explicit conduct (see 18 U.S.C. §§ 2252 and 2256(2)).

                b.     "Child Erotica," as used herein, means materials and items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene and that do not necessarily depict minors in sexually explicit poses or positions.

                c.     "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet. IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet. "Domain name" is a name that identifies an IP address.

PROBABLE CAUSE

                4.     On or about December 30, 2020, law enforcement in Maryland received two cybertips from the National Center for Missing and Exploited Children ("NCMEC"), informing them that an individual (the "TARGET") was utilizing a Twitter account with the number 1240754153749692416 (the "Twitter Account") to communicate with and persuade minors to produce and send sexually explicit images and videos to him (together, the "Reports"). According to records submitted by Twitter in connection with the Reports (the "Twitter Records"), the TARGET utilized several different vanity names on Twitter, including "BINGIEBONGIE", "thelifeofchris88", "LifeOfChris69", "DACRYPHILIC", "SOMNOPHLLIC" and "DACRYYBOYY". Additionally, the profile

5

associated with at least one of these vanity names included an age for the TARGET of 17 years old.

5.      Included in the Reports and Twitter Records is information regarding various IP addresses used by the TARGET to access the Internet.   At least two of these IP addresses resolve to an address in Holbrook, New York (the "Residence"), where the defendant CARMINE SIMPSON resides.   At least four of these IP addresses resolve to locations at the 75th Precinct of the New York City Police Department ("NYPD") in Brooklyn, New York.   Based on records received from the NYPD, SIMPSON is employed as a police officer with the NYPD and works in the 75th Precinct, and he has a personal cellular telephone with a number ending in 2276 (the "2276 Number").   Based on information in the Reports and the Twitter Records, the TARGET provided the 2276 Number when he established the Twitter Account.

6.      On January 28, 2021, I executed a search warrant at the Residence, where I met and spoke with the defendant CARMINE SIMPSON, who identified himself to me.   Prior to executing that search warrant, I reviewed photographs shared by the TARGET on Twitter, including one of an adult male wearing a NYPD t-shirt.   During the execution of that search warrant, the FBI located and photographed various items in the Residence that I had previously seen in photographs shared by the TARGET on Twitter, including but not limited to a pair of boxer shorts, a gun holster and several bed spreads.   Additionally, during the same search, I recovered SIMPSON's telephone, which I know is assigned the 2276 Number because I called that number and SIMPSON's telephone rang.   Having reviewed photographs shared by the TARGET on Twitter and met SIMPSON in person, I can conclude that SIMPSON is the individual pictured in the photographs shared by the

TARGET on Twitter.   In some of these photographs, however, SIMPSON used a filter to make himself appear younger than he is.   As a result, there is probable cause to believe that the TARGET is CARMINE SIMPSON.

7.     Based on the Twitter Records, which include online chats occurring in or about and between April 2020 and December 2020, the defendant CARMINE SIMPSON communicated with at least 46 apparent minors, who appear to have been between the ages of 13 and 17.   In these chats, SIMPSON requested that the minors take sexually explicit videos and pictures of themselves, oftentimes masturbating or after drawing on their body with a marker.   Based on a review of the material submitted by Twitter, SIMPSON obtained at least 18 photographic images and 33 videos containing child exploitative material from minors.   SIMPSON also obtained at least 162 photographic images and 48 videos containing child erotica.   During these conversations, SIMPSON repeatedly represented that he was 17 years old.

8.     For example, on or about and between September 7, 2020 and September 30, 2020, both dates being approximate and inclusive, the defendant CARMINE SIMPSON was communicating via Twitter with Jane Doe 1, who appears to be an approximately 13-year-old female.   Initially, SIMPSON groomed Jane Doe 1, saying things like, "Babygirl! You are ADORABLE" and "you're cute to look at."   The conversation gradually escalated, and SIMPSON asked questions such as, "You own cute undies?", "Yo so turns out imma be home alone for a bit. If you wanna have like FaceTime sex or something???"   Initially, Jane Doe 1 responded, "heh um i cant bc i have to like do school stuff :(( sorryyy[.]"   Thereafter, SIMPSON convinced Jane Doe 1 to send pictures and videos of herself where she is partially clothed.   SIMPSON encouraged Jane Doe 1, saying

things like, "This is hot as fuck," and then sent Jane Doe 1 links to websites as suggestions of the pictures that he would like of Jane Doe 1. SIMPSON also asked Jane Doe 1 if she owned any "toys." Jane Doe 1 replied that she did not, but she had a "brush." After Jane Doe 1 and SIMPSON appear to have had a live chat on a separate platform, Jane Doe 1 sent SIMPSON a 12-second video of herself, in which she is inserting a hair brush into and out of her vagina. SIMPSON replied in substance, "Babygirl dont stop," "Keep the videos coming for me," and "I love how wet I made tou [sic]." Thereafter, SIMPSON asked Jane Doe 1 if she liked "body writing". Several days later, after SIMPSON complained that he had not "seen [Jane Doe 1] naked in two days :(", and Jane Doe 1 responded that she was busy in school, SIMPSON asked Jane Doe 1 for more nudes.

9. Similarly, on or about and between April 11, 2020 and September 15, 2020, both dates being approximate and inclusive, the defendant CARMINE SIMPSON was communicating via Twitter with Jane Doe 2, who appears to be approximately 15-years-old. Initially, SIMPSON groomed Jane Doe 2, saying things like, "You got cute eyes", and then progressed to asking for "lewds." Later, during a highly sexual conversation, Jane Doe 2 said that she was "wet," and SIMPSON asked for "proof." In response, Jane Doe 2 sent a picture of wet underwear. During these conversations, SIMPSON asked Jane Doe 2 to write various words and phrases on her body, and specifically under her belly button, including "use my holes", "cum", "whore", "useless", "pig", "desperate", "babyboy," "prince" and "anal slut" and then photograph herself. Thereafter, Jane Doe 2 sent a picture and a video depicting the various words written with a marker on Jane Doe 2's abdomen. On or about April 13, 2020, as part of a highly sexual conversation, SIMPSON said to Jane Doe 2 in substance, "I wanna see your cute little ass bright red from spankings." In response, Jane

Doe 2 sent a picture of herself, kneeling on a bed, where she is nude from the waist down, her backside is red, and her vagina is visible in between her legs.  Later on that same day, SIMPSON asked Jane Doe 2 to "Bend over. Shove your useless face into the bed and spread those cheeks for daddy."  Thereafter, Jane Doe 2 sent a video file depicting herself, lying face down on the ground with her backside up in the air, and her vagina is visible in between her legs.  Later that same day, SIMPSON told Jane Doe 2 to "Show me how you fuck yourself Babyboy", and in response, Jane Doe 2 sent a 25-second video wherein she is inserting her fingers in her vagina from behind.  On or about April 23, 2020, after Jane Doe 2 sent SIMPSON a video of herself masturbating, SIMPSON responded, "Try filming it again but this time, put your belt around your neck and pull it."  Thereafter, Jane Doe 2 sent SIMPSON a 36-second video in which Jane Doe 2 is using one hand to pull on a belt to choke herself and the other hand to masturbate.  On or about April 25, 2020, SIMPSON told Jane Doe 2 to write "CARMINES SLUTTY LITTLY [sic] BOY" on her chest.  Thereafter, Jane Doe 2 asked SIMPSON if that was his name, and SIMPSON responded, "It is. Chris is my middle name" and "I have chris on Cuz 1) Carmine is a weird name 2) it's rare so I don't want irl [in real life] to find me."  Jane Doe 2 then sent an image of herself, wherein "CARMINES SLUTTY LITTLE BOY" is written on her chest.  In total, it appears that Jane Doe 2 sent SIMPSON approximately 51 files, including photographic images and videos, containing child pornography or child erotica. During the course of communicating with Jane Doe 2, SIMPSON shared his "Snap" username, which he said was "CarmineSimpson." Based on a brief search of SIMPSON's telephone, pursuant to a search warrant executed on January 28, 2021, I observed that defendant had the SnapChat application, which was signed into the "CarmineSimpson" account.

10.     Similarly, on or about and between November 19, 2020 and November 20, 2020, both dates being approximate and inclusive, the defendant CARMINE SIMPSON was communicating via Twitter with John Doe 1, an individual whose identity is known to the FBI.   John Doe 1 is a transgender male, who was 13 years old on that date.   As part of that conversation, SIMPSON said the following, in substance and relevant part: "Do you take good nudes?", "You take good nudes? Prove it", "Okay heres what youre gonna do babygirl. Youre gonna grab a sharpie (or a pen) and youre gonna write Im sorry daddy across your tits/chest", "How many words do you think we can add to your body?", "Right above your pussy write cum inside me then have an arrow point to your hole", "Naked in the bathroom?", "Well do you want to keep taking pictures and videos? Or would you prefer to video call me baby?", "Well Im [sic] that case I want 4 videos \n1) you slapping your lretty [sic] face \n2) you gagging on your fingers (the more spit the better) \n3) you choking yourself\n4) you pick! Its your choice for number 4," "Good that can be video #5\nI wanna hear you say my name is [John Doe 1] and my teen body belongs to you," "Now put on some clothes and get out of there before people start thinking you fell down the toilet", "Did taking videos for me turn you on?"   As part of that conversation, John Doe 1 sent SIMPSON at least two sexually explicit videos.   These include a video where John Doe 1 is lying down, fully nude, with marker on their body and their fingers in their vagina.

11.     Accordingly, I submit that there is probable cause to believe that the defendant CARMINE SIMPSON used Twitter to persuade minors, including but not limited to Jane Doe 1, Jane Doe 2 and John Doe 1, to create sexually explicit images of themselves and send him these images via Twitter.

10

WHEREFORE, your deponent respectfully requests that the defendant

CARMINE SIMPSON, be dealt with according to law.

AARON E. SPIVACK
Special Agent, Federal Bureau of Investigation

Sworn to before me this
28th_day of January, 2021

/s/  AK Tomlinson
THE HONORABLE A. KATHLEEN TOMLINSON
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to information associated with the Snapchat accounts associated with username "CARMINESIMPSON" (the "SUBJECT ACCOUNT") that is stored at premises owned, maintained, controlled or operated by Snapchat, Inc. ("Snapchat"), a social networking company headquartered in Santa Monica, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Snapchat**

To the extent the information described in Attachment B is within the possession, custody, or control of Snapchat, including any messages, records, files, logs or other information that has been deleted but is still available to Snapchat, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) and any other requests, Snapchat is required to disclose the following information to the government for the Subject Accounts, as defined in Attachment A, for the period of time from September 1, 2019 through present:

A.      All current and prior contact and personal identifying information, including full name, gender, contact email addresses, Snapchat passwords, telephone numbers, screen names, websites, device identifiers, and other personal identifiers;

B.      All activity logs for the accounts and all other documents showing the user's posts and other Snapchat activities;

C.      All photographs and comments uploaded by these usernames or accounts; all metadata associated with all photographs uploaded by these usernames or accounts;

D.      All profile information; links to videos, photographs, articles, and other items, and information about the users' access and use of Snapchat applications;

E.      All "check ins" and any other location information;

F.      All records of the accounts' comments on other photographs, including all photographs that the users have commented on and all direct message activity by the account;

G.      All IP logs, including all records of the IP addresses that logged into the accounts; all device identifier logs, including all records of the device identifiers that logger into the accounts;

H.      All records of the accounts' usage of the "Life" feature, including all photos that the users have "liked;"

I.      All records of searches performed by the accounts;

J.      The types of service utilized by the users;

K.      The length of service (including start date) and the means and source of any payments, both past and present, associated with the service (including any credit card or bank account numbers);

L.      All privacy settings and other account settings;

M.      All records pertaining to communications between Snapchat and any person regarding the users or the users' Snapchat accounts, including contact with support services and records of actions taken; and

N.      All records of Snapchat accounts used to log into the users' Snapchat accounts, including the Snapchat identification numbers of those accounts and any other related Snapchat information associated with the users' Snapchat accounts.

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Sections 2251 (sexual exploitation of children), 2252 (transportation, receipt, distribution and possession of material involving sexual exploitation of minors), 2252A (transportation, receipt, distribution and possession of child pornography) and 2422 (coercion and enticement) (together, the "Subject Offenses"), including, but not limited to:

(a) Records and information relating to the Subject Offenses, including comments, communications, photographs, and images, referring, relating to or identifying:

    a.   The use of the Subject Account to communicate with potential minor victims;

    b.   The use of the Subject Account to solicit, receive, possess, distribute, or transport, explicit, obscene or pornographic materials from minor victims as those terms are defined by the laws governing the Target Offenses;

    c.   The use of the Subject Account to share obscene materials, as that term is defined in the laws governing the Target Offenses;

    d.   The use of the Subject Account to threaten victims, regardless of age, with injury, reputational harm or emotional distress;

    e.   The use of the Subject Account to physically meet with potential victims;

    f.   The identity of the victims of the Subject Offenses;

2

g.  The identity of the perpetrators of the Subject Offenses.

(b) Evidence indicating how and when the Subject Account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Snapchat account owner(s);

(c) Evidence indicating the state of mind of the user of the Subject Account as it relates to the Subject Offenses;

(d) The identity of the person(s) who created or used the user ID associated with the Subject Account, including records that help reveal the whereabouts of such person(s);

(e) The identity of person(s) who communicated with the Subject Account about matters specified above; and

(f) contextual information necessary to understand the evidence described in this Attachment.